IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IGOR BELYAKOV             :
                          :
                          :
    v.                    :   Civil Action No. DKC 2004-4008
                          :
MICHAEL O. LEAVITT[1]     :
                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are: (a) the motion of Defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, to dismiss or, in the alternative, for summary judgment (paper 18); (b) Plaintiff's motion to file a surreply (paper 27); and (c) Plaintiff's request to stay the court's decision pending discovery. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will deny Defendant's motion, and deny as moot Plaintiff's motion and request.

**I. Background**

The following facts are either undisputed or viewed in the light most favorable to Plaintiff. Plaintiff Igor Belyakov, a

---

[1] Michael O. Leavitt is substituted as Defendant in place of the former Secretary of the U.S. Department of Health and Human Services, Tommy G. Thompson. *See* Fed.R.Civ.P. 25(d)(1).

U.S. citizen of Russian origin, was employed by the U.S. Department of Health and Human Services ("HHS") at the National Institute of Health ("NIH") as a staff scientist.  Plaintiff alleges that he was discriminated against on the basis of national origin.[2]   Plaintiff asserts that because of discrimination he was not promoted to the position of Mucosal Immunologist, for which he was qualified and had applied.[3]

In 2002, the National Institute of Dental and Craniofacial Research ("NIDCR"), an institute within NIH, advertised two tenure-track positions, one for Molecular Microbiologist/Immunologist and one for Mucosal Immunologist. On or around October 4, 2002, Plaintiff applied for both jobs. Two independent search committees were formed to fill the positions.  As part of the hiring process, Plaintiff was selected to give a presentation to the search committees, but was limited to one seminar in which to cover both disciplines (i.e., molecular microbiology and mucosal immunology).[4] On March

---

[2] In the complaint, Plaintiff also asserted a claim of age discrimination that he has since withdrawn.  (Paper 22).

[3] In the complaint, Plaintiff also alleged that because of discrimination he was not selected for the position of Molecular Microbiologist/Immunologist and that he was subject to a discriminatory hostile work environment.  Both claims have since been withdrawn.  (Paper 12).

[4] There is some question in the record as to whether members
(continued...)

17, 2003, Plaintiff gave a forty-five minute seminar covering both topics and was interviewed by the Molecular Microbiologist/Immunologist search committee.[5] Plaintiff asserts that shortly before his seminar, he met with Dr. Tabak, director of NIDCR, and member of the selection panel for the Mucosal Immunologist position.[6]  Plaintiff states that during this meeting, Dr. Tabak asked him about his national origin, and, after Plaintiff stated he was of Russian origin, commented that "there are too many Russian scientists at the NIDCR already."

On June 26, 2003, Plaintiff received an e-mail from Dr. Wahl stating that Dr. Tabak decided to discontinue the search for a Molecular Microbiologist/Immunologist at that time.  At some point during the spring or summer of 2003, the search committee

---

[4](...continued)
of both search committees were present at Plaintiff's seminar or if only members of the Molecular Microbiologist/Immunologist committee were in attendance.

[5] At that time, Dr. Wahl, chief of NIDCR's Oral Infection and Immunity Branch, told Plaintiff he would be scheduled for a separate interview with the Mucosal Immunologist search committee.  On June 27, 2003, Plaintiff sent an e-mail to Dr. Wahl to remind her about scheduling an interview with the Mucosal Immunologist search committee.  Plaintiff asserts that Dr. Wahl did not respond.  Plaintiff never received an interview with the search committee.

[6] Although Plaintiff never clearly specifies Dr. Tabak's role in the selection process, Defendant states in his reply memorandum (paper 26), that Dr. Tabak was part of the selection panel.

narrowed the candidate pool for the Mucosal Immunologist position to Plaintiff and Dr. Chen, a candidate of Chinese origin who was working as a research fellow for Dr. Wahl at the time in question. On September 23, 2003, Dr. Wahl contacted Plaintiff to let him know that the search committee had recommended Dr. Chen for the position; that the director, scientific director, and the branch chief concurred in the decision; and that paperwork had been submitted to appoint Dr. Chen. On September 25, 2003, Plaintiff complained about the selection process to Dr. Zerhouni, NIH Director, and Dr. Gottesman, Deputy Director of NIH. Dr. Gottesman contacted Plaintiff and told him that no tenure-track positions were approved without his permission, and that he would investigate Plaintiff's claims. On January 27, 2004, Dr. Gottesman contacted Plaintiff to let him know that he would be receiving a memorandum explaining the decision not to hire him. In the memorandum, Dr. Gottesman states that he polled all members of the search committee, and that they all concluded, based on Plaintiff's seminar and references, that he was not "the best qualified candidate for the position."

On February 23, 2004, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor at the NIH EEO office regarding his claim. On March 23, 2004, Plaintiff was given a

4

Notice of the right to file a discrimination complaint and filed a formal complaint that day.  On May 10, 2004, Plaintiff received a letter from HHS dismissing his complaint regarding the closed Molecular Microbiologist/Immunologist position based on his failure to state a claim.  Plaintiff's claim regarding the Mucosal Immunologist position was also dismissed because HHS found that the EEO counselor was not contacted within the requisite forty-five day time period.  *See* 29 C.F.R. § 1614.105(a)(1). Plaintiff appealed HHS's decision to the Equal Employment Opportunity Commission ("EEOC").  On September 21, 2004, the EEOC issued a decision affirming HHS's dismissal of Plaintiff's complaint.  The EEOC found that, with regard to both job positions Plaintiff challenged, he failed to contact an EEO counselor within the requisite forty-five days.[7]

Plaintiff filed a complaint in this court on December 23, 2004, alleging discrimination by Defendant on the basis of national origin, under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e, *et seq.*).  Plaintiff seeks: (a) a declaratory judgment that Defendant's conduct violated Plaintiff's rights; (b) an injunction enjoining Defendant from

---

[7] Whether Plaintiff contacted an EEO counselor within the requisite time period is not at issue in this case.  Defendant concedes that Dr. Gottesman did not finalize the decision regarding the Mucosal Immunologist position until late January 2004 and therefore Plaintiff's EEO contact was timely.

5

engaging in such conduct in the future; (c) back pay and fringe benefits and/or front pay and benefits; (d) compensatory and punitive damages; (e) attorneys' fees and litigation costs; and (f) other relief as the court may deem just.

**II.  Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment under Fed.R.Civ.P. 56.  A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters outside of the pleadings and the court considers those matters as here, the court will treat the motion as one for summary judgment.  *See Gadsby by Gadsby v. Grasmick*, 109 F.3d. 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

**III.    Analysis**

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation omitted), *cert. denied*, 535 U.S. 933 (2002). In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of

8

sufficient probative force to reflect a genuine issue of material fact." *Id.* (internal quotation omitted). More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* at 391-92 (internal quotation omitted). If such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Plaintiff alleges direct evidence of discrimination that is sufficient to survive summary judgment. Prior to Plaintiff's seminar presentation, Plaintiff states, and the court must accept as true for the purposes of this motion, that Dr. Tabek asked Plaintiff about his national origin and, upon hearing Plaintiff's response, stated that "there are too many Russian scientists at the NIDCR already." In the reply memorandum, Defendant's primary argument is that, based on Plaintiff's "late disclosure" of Dr. Tabak's statement, it is "extremely suspect" and therefore cannot preclude summary judgment. In considering a summary judgment motion, however, the court "must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

9

Moreover, contrary to Defendant's argument, Plaintiff is not attempting to "create a question of fact" by offering internally contradictory evidence.  The question of fact is created when Defendant disputes whether the discriminatory comment was made and challenges Plaintiff's veracity.

In a footnote, Defendant argues that even if the statement was made, it is "insufficient to establish direct evidence of discrimination" because it is an isolated remark that was not related to the selection decision.  Defendant does not deny that Dr. Tabak was on the selection panel, but implies that because "numerous officials" were involved in the multiple steps of the selection process, a comment by the director, Dr. Tabak, cannot be found to "relate" to the selection decision.  In fact, Dr. Wahl's September 23, 2003, e-mail shows that Dr. Tabek played an active role in confirming the recommendation of the search committee to hire Dr. Chen and that based on this confirmation the paperwork was submitted to hire Dr. Chen.  Defendant offers no evidence to show that Dr. Chen would have been hired even if the director of NIDCR, Dr. Tabak, had not concurred in the search committee's decision.  Defendant's reliance on *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999), to support its "isolated remark" argument is misplaced.  In that case, the Fourth Circuit held that a remark by the female plaintiff's future subordinate that he would have trouble

10

working for a woman was insufficient to support a sex discrimination claim, where the decisionmaker ignored the co-worker's comment and promoted the plaintiff, and the plaintiff wasn't terminated until months later. *Id*. The facts presented here are easily distinguished. Plaintiff asserts that directly before his seminar and interview the director of the institute to which he applied told him that there were "too many Russian scientists" working at the institute. Moreover, the evidence shows that the director was a member of the selection committee and later confirmed the search committee's recommendation to hire another, non-Russian scientist for the position.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment, will be denied. Accordingly, Plaintiff's motion to file a surreply and request to stay the court's decision pending discovery will be denied as moot. A separate Order will follow.

                                                  /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge